at all. Thank you. Good morning, your honors. My name is Alan Roth. I'm from La Trobe, Pennsylvania. La Trobe is the home of Arnold Palmer. It's the home of Mr. Rogers. And in addition to that, it's the birthplace of professional football. We're here today because Mr. Saccoccia is complaining about the money judgment assessed against him in the amount of $136 million. And the reason that judgment happened was because the judge claimed there was joint and several liability with 10 other people in the case. Those 10 people combined had done activities which did include a total of $136 million. But the only amount that could be attributed to my client was $9 million. And that's what the indictment says, that he had a $9 million activity in the organization. That's the percentage that he got for shipping the money. No, the percentage would have been 5%, and 5% of the $136 million would actually be $7 million. But the $9 million is what he was actually involved in the organization in doing. Well, I thought he was deemed to be the leader of the entire operation, so that his cut may have been X, but that he was responsible for moving all of it. Well, I understand that they are claiming that he was a leader. I understand that. But in terms of his activity and the amount of money that he had access to and used, it was $9 million. Is the end use critical to your argument there? In other words, didn't all of the money go through his account? Well, I can't say whether all of the money went through his account or not. I wasn't there for the trial. Well, we have a record. Does the record show that all of the money went through his account? As far as I know, that's not true is what I'm told, but I don't know. Actually, the money was transferred. Imagine one was of the view that all of the money went through his account. Is there a problem under Honeycutt then? That very well may be true. I do not know that. Is there a problem under Honeycutt then if it all went through the account? Well, I believe there is because you're holding him joint and separately liable with all these other people, all who had activities and did generate some of that money. You're holding him liable for the money going through his account. That's not just joint and separate. Well, I understand that's a difficult position for me to have to take there. Didn't he and his wife, weren't they responsible for transferring the money? Well, apparently they're the ones that transferred the money to whatever organization then transferred it ultimately to the cartel. So that's true. And he got his percentage. And so why isn't he responsible for all of it? Well, I mean, our contention is he should only be responsible for his percentage because that's what he gained out of the operation. And the percentage of $136 million is roughly $7 million at 5% and at the trial it was indicated that the percentage was somewhere between 5% and 10% and even if it was 10% that would be $13.6 million. But he controlled it all. He controlled it all. He made sure everyone got paid what they needed to be paid. Well, that is true. I believe that's true, yes. What we're contending is since you're using joint and several and because all the other people were involved in the organization and his profit from the organization was only somewhere between $9 and maybe $11 million that he should only be responsible for between the $9 and $11 million. And so the others are saying, I assume if they have appeals going on, they're saying the same thing. They should only be separate. So you're basically saying that under Honeycutt that you just can't have joint and several liability. Exactly. We think that's a general principle. That's what Honeycutt stands for, that you can't have joint and several liability. I don't understand why this is joint and several. Imagine he has $136 million in his garage and all he's going to keep of it is $1 million. Under Honeycutt you can only hold him for the million? Well, I believe that is true because you can't hold him responsible for the rest of the money that doesn't go to him. It's the portion that he... Even if he held it all? Well, even if he held it, he didn't go to him. He didn't ultimately receive the benefit of it. But he distributed it. He made the decision as to who would get what. It's not just joint and several liability. It's a matter of who controlled the proceeds. They were in his hands and he distributed it. So I believe that is true because it's only a portion that he would have been manipulating and for himself that we believe he should be responsible for. But in Honeycutt, the actors that they were dealing with, they didn't have the kind of control that you're accepting the record shows this person had, right? Right. So how does Honeycutt help you then? I guess I'm not following that. Well, there's... Example, one of the cases which the government raised was Carpenter versus United States. And Carpenter was different in the case that we have because Carpenter used all the money for his own benefit. He was using that to try to gain more money. He was investing in wild schemes to try to gain more money. And that's how we distinguish ourselves from Carpenter is that my client did not use this money for his own benefit. It was just passed on to where it was going. And we think that's a distinction we can make because... And that's why Carpenter should not apply in this case because it's... When I go back and look at the record, this issue has come up in various breaths since the early 90s when your client was convicted in the original case, correct? Yes. You've raised this issue in many guises about the forfeiture. And you've lost all of them along the way, including the argument you're making today. But you've reopened on the basis of Honeycutt, I guess. Is that why we're... That is correct. We're here because of Honeycutt. We believe that Honeycutt established a rule that makes it different than what it was in the past. You know, one of the prior times he tried to do a 2255, but that involves custody of a prisoner. So therefore, the 2255 really wouldn't matter. And that wasn't dispositive of where we are today. And I would also point out that the Carpenter case, which they're relying heavily on, is actually a civil case and not a criminal case. So there's a distinction between those two things, those two types of cases. And we believe that makes a large difference in this case. We believe that Honeycutt is retroactive. And we believe that's true because this is a constitutional issue. It's actually a watershed statutory and jurisdictional interpretation that was simply wrongly decided by the lower court. The lower court decided this based on the fact that they believe that there was a constitutional issue. And that's why Honeycutt joint and several liability. And we believe that Honeycutt reverses that. Under Davis v. United States, that's a Supreme Court case from 1974, statutory interpretation cases are available for collateral relief, which is what we're doing here. This case continues to be cited in 1651 and 2241 cases as to retroactivity and has not been overturned by Teague v. Lane that limits constitutional retroactivity. The Honeycutt decision is retroactive in collateral proceedings because the rule alters the range of conduct of the class of persons that the law punishes. It's a watershed implicating the fundamental fairness and accuracy of criminal proceedings. The government improperly demanded joint and several liability. In their indictment at page 41, 42, and 46, they demanded joint and several liability. And we believe that's adverse to Honeycutt. And therefore, we believe we should receive some benefit from that because the government was seeking to do something which Honeycutt forbids to be done. And the government has taken, as late as 2010, the government has taken all kinds of funds from Mr. Sokosha. Mr. Sokosha had a gold business that he was operating. They took all the funds from that gold business. He had investments in Luxembourg. And he had investments in Switzerland. And they went and took all those funds as well, even though those funds did not arise from any of this operation. And that's why we believe that the exaction of these funds is inappropriate in this case because they were not funds that arose from the cartel. They were funds that arose from his business. So, in conclusion, I just believe that Honeycutt actually forbids this kind of activity on the part of the district court. And we would ask that the court find it that way. Okay. Thank you. Good morning, Your Honors. May it please the court, Zachary Cunha on behalf of the United States. This morning, I'd like to begin with the Honeycutt question, although it's the government's position that the court need not reach that issue because of the various procedural bars. There is not a procedural mechanism in this case at this late date to apply Honeycutt's position. Even were it applicable to Mr. Sikosha's case, but I'd like to set aside any doubt that it is applicable here. And I'd like to begin by addressing the argument that my brother counsel raised a few moments ago, and that's raised extensively in the papers, that Honeycutt creates some sort of jurisdictional problem here. Respectfully, Honeycutt is not a jurisdictional case. It's not a constitutional case. It's a case of statutory interpretation. And it doesn't create a jurisdictional problem here. The district court unquestionably had jurisdiction to try and to convict Mr. Sikosha under the general jurisdictional statute for federal criminal cases, 28 U.S.C. 3231. And on his conviction, it had the authority and indeed the obligation under the forfeiture provisions of the WICO statute and 18 U.S.C. 982 to impose the appropriate forfeiture related to his sentence, and that's a jurisdiction. What Mr. Sikosha frames as a jurisdictional argument is really not that at all. It's an argument that his forfeiture judgment was too large. And in this instance... And that Honeycutt says that you can't have joint and several liability. Well, respectfully, Honeycutt says that you can't have joint and several liability without more. You cannot have a low-level co-conspirator who doesn't receive any of the proceeds of the crime. You've got nothing. Exactly. This is not that case by any stretch of the imagination. As became apparent in some of the questioning, as the record makes abundantly clear, Mr. Sikosha was the leader and organizer of this WICO conspiracy. He exercised dominion and control over these funds. And to, I believe, it was Judge Thompson's question concerning whether he was using these funds for his benefit, he was certainly using these funds for the benefit of the money laundering conspiracy he was operating on behalf of this drug cartel. And I think there are a couple of points in that regard. First, the case law, and in preparing for this morning's argument, I would note that there have been a couple of decisions that have come down recently from both the Second and the Eleventh Circuit, and we're happy to put in a supplemental 28-J letter on that point. There was a decision by the Second Circuit in a case called Tanner, which, consistent with the Second Circuit's decision in SEC v. Medder, which we cite in our brief, says that Honeycutt does not apply to high-level leader and organizers of criminal schemes. Tanner holds the same. Similarly, the Eleventh Circuit, just under two weeks ago in a case called Bain, both rejected the jurisdictional argument that Mr. Sikosha is raising here and also suggested that Honeycutt does not apply to mastermind of a fraud scheme. The principle is the same here. Mr. Sikosha and his wife jointly controlled the accounts through which these funds were laundered, and he personally wired approximately three-quarters of the money that passed through these accounts during the time the conspiracy was underway. The other quarter was his spouse who wired it? I'm sorry? You said he personally wired three-quarters of it? My recollection is that the district court's finding was that he personally wired three-quarters and his spouse wired the remainder at his direction. At his direction. I believe that's the specific language, and I think that the district court's opinion on forfeiture, which we cite in the brief... So even setting aside how to treat masterminds generally, here the argument is all of the funds that were forfeited are funds that he had direct control over. Exactly. And I think that's very consistent with this court's holding in Carpenter, which incidentally is a criminal case. That's a wire fraud case. It's obviously not the same statute, but the principles that are articulated by this court in Carpenter apply here. The notion that he had the use and benefit of these funds and he used them for the purpose of carrying out the Rico money laundering conspiracy. Is this the same statute as in Honeycutt or not? No, Your Honor. Are you contesting that the Honeycutt analysis applies to this statute? No, Your Honor. We're not in the sense... Are you conceding that it does, or are you just saying we don't have to decide that? Well, we're saying that this is not a The language that's used in 853, the drug forfeiture statute in Honeycutt, is substantially the same as that used in the Rico forfeiture. You're not making any argument to us that there's a reason to think that the Honeycutt analysis wouldn't apply here. Let me say, Your Honor, that if we were talking about some low-level peripheral player whose conduct was analogous to Mr. Honeycutt's, who was being convicted of a Rico offense and whose forfeiture was sought under the Rico provision at issue here, yes, we think Honeycutt would apply. We don't think Honeycutt applies to Mr. Sikosha because of his role... But you wouldn't think it would apply under the statute at issue in Honeycutt either? Well, at this point, we certainly would, Your Honor. At this point, we would, you know, given the Supreme Court's decision... No, no. I'm saying on the same facts. On the same facts? Under the statute Honeycutt interpreted, you would say even under Honeycutt, these facts under that statute would subject to forfeiture. Are you not saying that? Well, I think the only distinction I would draw is because that is a drug proceeds forfeiture statute, the conduct that could be involved giving rise to forfeiture could be different from in a Rico conspiracy. And on that point, I'd also note that this Court, actually in the Hurley case, which was the companion case to Mr. Sikosha's prosecution, consistent with the Supreme Court's decision in Rosello, reiterated that Rico forfeiture provisions are one of the rare criminal law categories that are to be read broadly to change that. Honeycutt didn't overrule any of those decisions. But that's, I guess, what I'm trying to find out, just for purposes of understanding what you're asking us to do. I take it the argument is the facts are such that you think the forfeiture is proper, notwithstanding that Honeycutt came down. Yes. Honeycutt doesn't apply because of the facts. And on top of that, there are, of course, all of the reasons that the Court doesn't even need to reach that issue because there isn't a procedural vehicle to raise a... But are you reserving the question that there's something unique about this statute that might make it especially easy to conclude that... No, no. Forgive me if I was unclear on that. We're not making that argument, Robert. The language is substantially the same. And again, on the forfeiture issue, I would say that this Court has reiterated twice since Honeycutt, in both Carpenter and in George, that forfeiture serves broader punishment and deterrence interests beyond simply clawing back the net proceeds of an offense. And those interests are not served if the interpretation that Mr. Scotia presses were to prevail. If the Court has any questions, I'm happy to address them. Failing that, we would rest on our brief and ask that the Court affirm. I just have one last question. There's no jurisdictional problem. If we agreed with you on the merits of the Honeycutt analysis, there's no problem with us just deciding on that basis and just assuming that all these vehicles existed. Is that right? Yes, sir. Of course, we're not conceding the viability of any of those vehicles, but we think the Court could reach that issue if it's so inclined. Thank you. Thank you.